Filed 7/1/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAVID CHANG et al., | B261194 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC479858) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Appellant. | |

     APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin Clement Brazile, Judge.  Reversed.

     Hurrell Cantrall, Thomas C. Hurrell, Melinda Cantrall, for Defendant and Appellant.

     Green & Shinee, Elizabeth J. Gibbons, Amanda J. Waters, for Plaintiffs and Respondents.

_____

A public entity employer provided a defense for three employees under a reservation of rights, then refused to pay the resulting judgment for battery and civil rights violations on the ground that the employees acted with actual malice. The employees sought indemnification from their employer under Government Code section 825.[1] The trial court granted summary judgment in favor of the employees. On appeal, the public entity contends that because the defense was conducted under a reservation of rights, the employees had to satisfy the requirements of section 825.2 for indemnification. We hold that section 825.2 applies when a public entity employer provides a defense under a reservation of rights that includes reservation of the right not to indemnify for acts committed with actual fraud, corruption or actual malice. An employer's reservation of the right to indemnity from the employee for acts committed with actual fraud, corruption or actual malice is necessarily a reservation of the right not to indemnify the employee for such acts. We reverse the judgment with directions.

### FACTS AND PROCEDURAL BACKGROUND

On November 5, 2007, Los Angeles County Sheriff's Deputies David Chang, Anthony Pimentel, and Kris Cordova assaulted inmate Alejandro Franco, including using pepper spray on his anus and genital area. Franco brought an action against the deputies for battery and civil rights violations under 42 U.S.C. § 1983. (*Franco v. Gennaco, et al.*, (C.D. Cal. Aug. 11, 2015, No. LA CV 09-00893-VBF-FFMx) (*Franco*).)

The deputies signed agreements with the County of Los Angeles setting forth the terms and conditions under which the County would defend them. The first paragraph of each agreement listed circumstances under which the County might withdraw from defending a deputy, including if the County determined he did not act within the scope of his employment under section 995.2, subdivision (a)(1), or he acted or failed to act

---

[1] All further statutory references are to the Government Code, unless otherwise stated.

2

because of actual fraud, corruption, or actual malice under section 995.2, subdivision (a)(2).

The second paragraph stated circumstances under which the County might not indemnify the deputy: "In defending you, the County reserves its right not to pay any judgment, compromise or settlement on your behalf until it is established that the injury arose out of an act or omission occurring within the scope of your employment as an employee or officer of the County. The County also will not pay any party of a claim or judgment that is for punitive or exemplary damages. (Section 825(a).)"

The third paragraph stated circumstances under which the County might seek indemnification from the deputy: "If the County pays any claim or judgment, or any portion thereof, for an injury arising out of your act or omissions, the County may recover the amount of such payment from you unless you establish that the act or omission upon which the claim or judgment is based occurred within the scope of your employment as an employee or official of the County, and the County fails to establish that you acted or failed to act because of actual fraud, corruption or actual malice, or that you willfully failed or refused to reasonably cooperate in good faith in the defense conducted by the public entity. (Section 825.6.)"

The agreement ended with a recitation in capital letters, "I request and agree that the County may provide for my defense in the subject action, subject to the reservations set forth above. I agree to cooperate fully with the attorneys the County provides to me, and keep them advised at all times of my mailing address and telephone number."

On September 9, 2010, following a jury trial, the jury found the deputies violated Franco's federal civil rights, causing injury or harm to him. The jury also found each of the deputies acted with malice, oppression or reckless disregard in violating Franco's civil rights. In addition, the jury found each of the deputies committed battery on Franco while acting within the course and scope of their employment with the Los Angeles County Sheriff's Department, causing Franco injury or harm. Each of the deputies acted with malice, oppression, or fraud in committing battery on Franco.

3

Against each deputy, the jury awarded compensatory damages of $85,000 and punitive damages of $50,000. The total compensatory damage award was $255,000. Judgment was entered on September 28, 2010, against the deputies and in favor of Franco. The deputies were jointly and severally liable for an award of costs of $6,754.80 and attorney fees of $189,331.67. The total judgment, excluding punitive damages, was $451,086.47. The judgment has not been paid.

The deputies' request for indemnification from the Los Angeles County Board of Supervisors was denied. The deputies filed a claim for damages with the County on July 11, 2011. On February 28, 2012, the deputies filed a complaint against several defendants, including the County, the Board of Supervisors, and the Los Angeles County Office of the County Counsel, seeking to compel payment of the *Franco* judgment. On June 17, 2013, the deputies filed the operative third amended complaint for indemnification of the compensatory damages award. The complaint alleged Franco was the "real party in interest" to whom the damages were owed. The deputies were seeking indemnification for these damages. The cause of action for indemnification was based on sections 814 and 825. The deputies alleged they were entitled to indemnification for all economic, non-punitive damages awarded in *Franco* as a matter of law.

On August 14, 2014, the county defendants filed a motion for summary judgment, or in the alternative, summary adjudication, on grounds including that: 1) the deputies' claim for indemnification was barred under section 825, subdivision (b), because the jury found the deputies acted with malice; 2) the deputies were not entitled to attorney fees under section 800; and 3) the Board of Supervisors and the County Counsel were immune as a matter of law. The deputies opposed the motion.

The deputies filed a motion for summary judgment, or in the alternative, summary adjudication, on August 15, 2014. The deputies argued the County must indemnify them, because: 1) the County was liable for their conduct in the course and scope of their employment under section 815.2; 2) the County provided a defense under section 825, subdivision (a), and as a result, the County required to pay the judgment based on acts arising out of the course and scope of their employment; and 3) the County reserved the

4

right not to pay the judgment only if the acts were not in the course and scope of employment. The County opposed the motion.

A hearing was held on the motions. At the time of the hearing, Franco had attached the deputies' bank accounts and was seeking to execute on the judgment in the underlying action. On December 18, 2014, the trial court granted the deputies' motion for summary adjudication on the issue of indemnification based on finding the County was required to indemnify the deputies, excluding punitive damages, pursuant to section 825, subdivision (a), and the reservation of rights. The trial court denied the county defendants' motion for summary adjudication of the indemnification claim, finding it was not barred by application of section 825.2, subdivision (b), but granted summary adjudication on the issues of attorney fees and immunity of the Board of Supervisors and the County Counsel. The trial court entered judgment in favor of the deputies based on the court's rulings on the summary adjudication motion, ordering that the deputies recover indemnification from the County of $451,086.47. The County filed a timely notice of appeal.

## DISCUSSION

### Standard of Review and Principles of Statutory Interpretation

We review the trial court's rulings on summary judgment motions de novo. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081-1082 (*MacIsaac*).) "On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

We also review questions of statutory interpretation de novo. (*MacIsaac*, *supra*, 134 Cal.App.4th at pp. 1081-1082.) "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent." (*Delaney v. Superior Court* (1990)

5

50 Cal.3d 785, 798.)  To determine legislative intent, "we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction."  (*Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd.* (1994) 23 Cal.App.4th 1120, 1126.)

The words of the statute are the first step in the interpretive process.  (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1397.)  "We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning.  [Citations.]  If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction.  [Citations.]  In such a case, there is nothing for the court to interpret or construe.  [Citation.]"  (*MacIsaac, supra,* 134 Cal.App.4th at p. 1083.)

We do not interpret the words of the statute in isolation.  (*MacIsaac, supra,* 134 Cal.App.4th at p. 1083.)  "Rather, we construe the words of the statute in context, keeping in mind the statutory purpose.  [Citation.]  We will not follow the plain meaning of the statute 'when to do so would "frustrate[ ] the manifest purposes of the legislation as a whole or [lead] to absurd results."'  [Citations.]  Instead, we will '"interpret legislation reasonably and . . . attempt to give effect to the apparent purpose of the statute."'  [Citation.]"  (*Ibid.*)

"When the plain meaning of the statute's text does not resolve the interpretive question, we must proceed to the second step of the inquiry.  [Citations.]  In this second step, 'the courts may turn to rules or maxims of construction "which serve as aids in the sense that they express familiar insights about conventional language usage."'  [Citation.]  We may also look to a number of extrinsic aids, including the statute's legislative history, to assist us in our interpretation.  [Citations.]"  (*MacIsaac, supra,* 134 Cal.App.4th at pp.1083-1084, fn. omitted.)

"If ambiguity remains after resort to secondary rules of construction and to the statute's legislative history, then we must cautiously take the third and final step in the interpretive process.  [Citation.]  In this phase of the process, we apply 'reason, practicality, and common sense to the language at hand.'  [Citation.]  Where an

6

uncertainty exists, we must consider the consequences that will flow from a particular interpretation. [Citation.]" (*MacIsaac, supra,* 134 Cal.App.4th at p. 1084.)

## **Indemnification**

The deputies contend they are entitled to indemnification from the County under section 825. The County asserts section 825.2 applies in this case, because the defense was provided under a reservation of rights. We conclude that section 825.2 applies when a public entity employer provides a defense under a reservation of rights that includes a reservation of the right not to pay a judgment based on actual fraud, corruption or actual malice.

"In 1963, the Tort Claims Act was enacted in order to provide a comprehensive codification of the law of governmental liability and immunity in California. (*Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 174.) As part of its overall statutory scheme, the Tort Claims Act provides that in the usual civil case brought against a public employee, a public entity is required to defend the action against its employee [(§ 995 et seq.)] and to pay any claim or judgment against the employee in favor of the third party plaintiff (§ 825 et seq.). A principal purpose of the indemnification statutes is to assure 'the zealous execution of official duties by public employees.' (*Johnson v. State of California* (1968) 69 Cal.2d 782, 792.)" (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1001, fn. omitted.)

A public entity's duty to defend an employee is contained in sections 995 through 996.6. Upon an employee's request, with certain exceptions as provided in sections 995.2 and 995.4, "a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity." (§ 995) A public entity may refuse to provide for an employee's defense if the public entity determines: 1) the act or omission was not within the employee's scope of employment; 2) the employee acted or failed to act because of actual fraud, corruption, or

actual malice; or 3) the defense would create a specific conflict of interest between the public entity and employee, as defined by the statute. (§ 995.2, subd. (a).)

A public entity's duty to indemnify an employee is contained in sections 825 through 825.6. Under section 825, subdivision (a), if an employee makes a timely request in writing that a public entity provide a defense in a civil action for an injury arising out of an act or omission occurring within the scope of his or her employment, and the public entity conducts the defense with the employee's reasonable good-faith cooperation, "the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed." [2] If the public entity conducted the defense pursuant to an agreement reserving the right not to pay the judgment until it is established that the injury occurred from an act or omission within the scope of employment, then the public entity is required to pay the judgment only if it is established that the injury occurred from an act or omission within the scope of

---

[2] Section 825, subdivision (a), provides: "Except as otherwise provided in this section, if an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed. [¶] If the public entity conducts the defense of an employee or former employee against any claim or action with his or her reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed. However, where the public entity conducted the defense pursuant to an agreement with the employee or former employee reserving the rights of the public entity not to pay the judgment, compromise, or settlement until it is established that the injury arose out of an act or omission occurring within the scope of his or her employment as an employee of the public entity, the public entity is required to pay the judgment, compromise, or settlement only if it is established that the injury arose out of an act or omission occurring in the scope of his or her employment as an employee of the public entity. [¶] Nothing in this section authorizes a public entity to pay that part of a claim or judgment that is for punitive or exemplary damages."

employment. (§ 825, subd. (a).) The public entity is not authorized under this section to pay punitive or exemplary damages. (§ 825, subd. (a).)

It is clear that under the provisions of section 825 alone, the County would be required to pay the non-punitive damages awarded against the deputies. The County conducted the defense. It reserved the right not to pay the judgment until it was established that the acts occurred within the scope of employment, but the jury found the acts causing Franco's injuries occurred within the scope of the deputies' employment.

The County contends, however, that section 825.2 applies when an employee seeks indemnification and the public entity conducted the employee's defense under a reservation of rights. Section 825.2, subdivision (a), states that, except as provided in subdivision (b), if an employee pays a judgment, or any portion of a judgment, that the public entity is required to pay under section 825, he is entitled to recover the amount of the payment from the public entity. Section 825.2, subdivision (b), provides: "If the public entity did not conduct his defense against the action or claim, or if the public entity conducted such defense pursuant to an agreement with him reserving the rights of the public entity against him, an employee or former employee of a public entity may recover from the public entity under subdivision (a) only if he establishes that the act or omission upon which the claim or judgment is based occurred within the scope of his employment as an employee of the public entity and the public entity fails to establish that he acted or failed to act because of actual fraud, corruption or actual malice or that he willfully failed or refused to conduct the defense of the claim or action in good faith or to reasonably cooperate in good faith in the defense conducted by the public entity."

Although section 825.2 states that it applies when an employee pays a judgment and seeks to recover those payments, the terms "pays" and "recover" have been interpreted broadly and do not require literal payment. (*Rivas v. City of Kerman* (1992) 10 Cal.App.4th 1110, 1120.) Section 825.2 has been interpreted to apply when a judgment is entered against the employee. (*Ibid.*) "A literal interpretation of section 825.2, subdivision (a) would also lead to great injustice for potentially innocent employees, denied a defense by their public entity employer, who nonetheless become

9

liable for a judgment arising out of the course and scope of their employment with the public entity. Such employees would be required to pay the judgment, in many cases bankrupting themselves, before triggering any duty on the part of the public entity employer to reimburse them for their losses. To the extent the judgment exceeds the employee's assets, the injured plaintiff would also be irreparably injured as he or she would have no ability to collect on the judgment for any amount in excess of the employee's ability to pay." (*Id.* at pp. 1120-1121.)

In cases where the public entity has defended an action under a reservation of rights, it would lead to an absurd result to require literal payment before applying section 825.2. If literal payment were required to satisfy section 825.2, then the right to indemnification when a defense has been conducted under a reservation of rights would depend on the speed and success of a third party's enforcement procedures. In this case, for example, the deputies would have the right to indemnification under section 825 as long as no payment has been made, but as soon as Franco attached their bank accounts and obtained a payment on the judgment, the deputies would have been required satisfy the provisions of section 825.2 to receive indemnification. This would lead to injustice. The terms "pays" and "recover" must be interpreted broadly to include situations where a judgment is entered against an employee in order to harmonize the provisions of sections 825 and 825.2.

Section 825.2, subdivision (b), applies when a public entity conducts a defense pursuant to an agreement "reserving the rights of the public entity against him," but it is not clear from the statute which rights the public entity must reserve to trigger the protections of section 825.2. A literal interpretation of section 825.2 would allow the public entity to reserve any right and invoke the protections of section 825.2. Under this interpretation, the rights reserved in the agreement could have no connection to the rights enforced in section 825.2, which would not effect the purpose of the statutory scheme. The agreement referred to in section 825.2 could be the same as the agreement referred to in section 825 reserving the right not to pay any judgment until it is established that the injury occurred from an act or omission within the scope of employment. Although this

10

interpretation would harmonize the statutory provisions, it would not provide any notice that the public entity would have the right not to pay a judgment arising from an act or omission within the scope of employment because of actual malice, corruption or actual fraud. The most sensible interpretation is that the agreement must reserve the right not to pay a judgment arising from an act or omission within the scope of employment because of actual malice, corruption or actual fraud in order for the public entity to rely on the protection of that right under section 825.2.

Our interpretation is supported by the legislative history. The California Law Revision Commission issued several recommendations in 1963 which formed the basis of the Tort Claims Act, including the following: "11. Whenever a public entity is held liable for acts of an employee committed with actual fraud, corruption or actual malice, the public entity should have the right to indemnity from the employee. This right to indemnity, however, should not exist in any case where the public entity has undertaken the defense of the employee, unless the public entity has reserved a right of indemnity by agreement with the employee. In conducting an employee's defense, the entity's interest might be adverse to the interest of the employee. For example, if both the employee and the entity were joined as defendants, the public entity's interest might be best served by showing malice on the part of the employee; for if the employee acted with malice the public entity could recover indemnity from the employee for any amounts the entity was required to pay. Hence, the undertaking of an employee's defense should constitute a waiver of the public entity's right to indemnity unless, by agreement between the entity and the employee, the public entity's right of indemnity is reserved." (Recommendation Relating to Sovereign Immunity, Tort Liability of Public Entities and Public Employees (Jan. 1963) 1 Cal. Law Revision Com. Rep. (1963) p. 819.)

We hold that when a public entity defends an employee under a reservation of rights which includes reserving the right of indemnity for acts or omissions because of actual malice, corruption or actual fraud, then the requirements of section 825.2 must be satisfied to be entitled to indemnification.

11

The agreement reserving the public entity's rights in this case included a reservation of the right to indemnity from the deputies for acts or omissions taken because of actual malice, corruption or actual fraud, as authorized under section 825.6.[3] By necessary implication, the County reserved the right not to indemnify the deputies for acts within the course and scope of their employment that were taken with actual malice. Having reserved that right, the County could invoke section 825.2. The County showed the jury found the deputies acted with actual malice, or at the very least, a triable issue of fact existed as to whether the deputies acted with malice. Therefore, the deputies' motion for summary adjudication of the issue of indemnification should have been denied.

---

[3] Section 825.6 provides, "(a)(1) Except as provided in subdivision (b), if a public entity pays any claim or judgment, or any portion thereof, either against itself or against an employee or former employee of the public entity, for an injury arising out of an act or omission of the employee or former employee of the public entity, the public entity may recover from the employee or former employee the amount of that payment if he or she acted or failed to act because of actual fraud, corruption, or actual malice, or willfully failed or refused to conduct the defense of the claim or action in good faith. Except as provided in paragraph (2) or (3), a public entity may not recover any payments made upon a judgment or claim against an employee or former employee if the public entity conducted his or her defense against the action or claim. [¶] (2) If a public entity pays any claim or judgment, or any portion thereof, against an employee or former employee of the public entity for an injury arising out of his or her act or omission, and if the public entity conducted his or her defense against the claim or action pursuant to an agreement with him or her reserving the rights of the public entity against him or her, the public entity may recover the amount of the payment from him or her unless he or she establishes that the act or omission upon which the claim or judgment is based occurred within the scope of his or her employment as an employee of the public entity and the public entity fails to establish that he or she acted or failed to act because of actual fraud, corruption, or actual malice or that he or she willfully failed or refused to reasonably cooperate in good faith in the defense conducted by the public entity. [¶] (3) If a public entity pays any claim or judgment, or any portion thereof, against an employee or former employee of the public entity for an injury arising out of his or her act or omission, and if the public entity conducted the defense against the claim or action in the absence of an agreement with him or her reserving the rights of the public entity against him or her, the public entity may recover the amount of that payment from him or her if he or she willfully failed or refused to reasonably cooperate in good faith in the defense conducted by the public entity."

The judgment in favor of the deputies and the portion of the order granting the deputies' motion for summary adjudication of the indemnification claim are reversed. The portion of the order denying the county defendants' motion for summary adjudication based on the application of section 825.2 must also be reversed. The matter is remanded for further proceedings consistent with this opinion.

## DISPOSITION

The judgment and the portion of the order granting summary adjudication in favor of David Chang, Anthony Pimentel, and Kris Cordova are reversed. The portion of the order denying the County's motion for summary adjudication of the indemnification claim is also reversed. The trial court is directed to enter a new and different order denying the motion for summary adjudication brought by Chang, Pimentel, and Cordova, and to conduct further proceedings on the County's motion for summary adjudication in accordance with this opinion. The County is awarded its costs on appeal.


KRIEGLER, J.


We concur:


TURNER, P.J.


BAKER, J.

13